UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **DAVID MANES** | **CIVIL ACTION NO. 6:13-cv-2753** |
|     **LA. DOC #495399** | |
| **VS.** | **SECTION P** |
| | **JUDGE REBECCA F. DOHERTY** |
| **WARDEN, LOUISIANA** | |
| **STATE POLICE BARRACKS** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

REPORT AND RECOMMENDATION

    David Manes, through his attorney, John Kevin Stockstill, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on September 27, 2013. Manes is an inmate in the custody of Louisiana's Department of Corrections. In this petition he attacks his 2005 felony convictions and the 99-year hard labor sentences imposed by the Fifteenth Judicial District Court, Vermilion Parish.

    This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

*Statement of the Case*

    On September 18, 2002 Manes was indicted by the Vermilion Parish Grand Jury and charged with two counts of First Degree Murder.

    On April 22, 2005 Manes pled guilty to two counts of manslaughter and one count of distribution of cocaine,  and, in accordance with the plea agreement, Fifteenth Judicial District Judge Durwood Conque imposed consecutive sentences totaling 99 years. [Doc. 6-2, Exhibit 1,

pp. 16-17; Doc. 6-9, Exhibit 8] Manes did not appeal.[1]

On April 27, 2005 he was transferred to the physical custody of Louisiana's Department of Corrections, and on September 1, 2005 he received his master service record which indicated that his parole eligibility date "was different than what he had been told by his attorneys at his sentencing." [Doc. 6-1, pp. 2-3] Sometime prior to September 16, 2005 he corresponded with Judge Conque and requested a copy of the sentencing transcript, and on September 16, Judge Conque ordered that he be provided a copy of the transcript. [Doc. 6-5, Exhibit 4] Thereafter, in December 2005 and January 2006, Manes's mother, Vicky Meeks, a paralegal by profession, contacted Craig Forsythe (Manes's death penalty mitigation expert) and Anthony Thibodeaux, (Manes's retained trial counsel), and both reiterated to her that Manes would be parole eligible after having served twenty years of his sentence. [Doc. 6-1, p. 3] Thereafter, Meeks claimed that in January 2006, she met with Assistant District Attorney Ted Ayo who agreed to memorialize his agreement to refrain from objecting to Manes's parole if Manes would agree to testify against his co-defendant, Jim Van Nguyen. [Doc. 6-1, p. 4]

On February 16, 2006,[2] Manes filed a *pro se* application for post-conviction relief,

---

[1] Indeed, under Louisiana law, he could not appeal his conviction since his guilty plea waived all non-jurisdictional pre-plea defects. *See State v. Crosby*, 338 So.2d 584 (La. 1976). Nor could he have appealed the sentence since it was apparently imposed in conformity with the plea agreement. See La. C. Cr.P. art. 891.2(A)(2) which provides in part, "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."

[2] Manes signed his application on February 15, 2006 and verified it on February 16; it was received and filed on March 14, 2006. Manes is a prisoner proceeding *pro se* and therefore, he is entitled to the benefits of the "mailbox rule" announced in *Houston v. Lack*, 487 U.S. 266, 282, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(A prisoner's *pro se* pleading is "filed" the moment he presents it to prison officials for mailing to the court. The date that Manes signed the pleading is the earliest date that the pleading could be said to have been filed.) The "mailbox rule" has

seeking an out-of-time appeal of his sentences[3] and alleging "[d]enial of direct appeal due to ineffective assistance of counsel." [Doc. 6-2, Exhibit 1, pp. 1-15] According to Manes, he "... asked Inmate Counsel to include the issue concerning his parole eligibility in the post conviction relief application, but Inmate Counsel believed it was not an issue because Manes was parole eligible." [Doc. 6-1, p. 4] His application was denied in the District Court on April 18, 2006. [Doc. 6-3, Exhibit 2, p.1] He sought writs in the Third Circuit Court of Appeals [Doc. 6-2, Exhibit 1, pp. 18-24] and on July 18, 2006 that Court denied writs noting, "... Relator fails to allege or prove grounds entitling him to an out-of-time appeal..." [*State of Louisiana v. David Manes*, Docket Number KH 06-00703; Doc. 6-4, Exhibit 3] He did not seek review in the Louisiana Supreme Court. [See Doc. 1, ¶9]

Meanwhile, in a letter dated March 30, 2006, he advised Judge Conque that he had still not received a copy of the sentencing hearing transcript. [Doc. 6-6, Exhibit 5]

In a letter received by the prison's records office on May 30, 2006, Manes indicated his desire to "set a Act 790 parole date." [Doc. 6-7, Exhibit 6] In a memorandum dated June 16, 2006, J. Babel of the Louisiana State Penitentiary Records Office advised that pursuant to La. R.S.15:574.4(B) and Department Regulation No. B-04-004, his convictions for crimes of violence required him to serve 85% of his sentence before being deemed parole eligible. [Doc. 1-

---

been adopted by the Louisiana Supreme Court, *see State of Louisiana ex rel. Egana v. State of Louisiana*, 00-2351 (La.9/22/00), 771 So.2d 638, and therefore, for the purposes of this report, and in the absence of evidence to the contrary, the date Manes signed his pleadings will be considered the date of filing.

[3] In his application Manes alleged, "Petitioner wishes to appeal his sentences..." [Doc. 6-2, p. 12] He thereafter alleged, "Petitioner contends that as of this date, he has not had an appeal of his sentences..." [Id.], and, "Because of counsel's unprofessional errors, petitioner was and is hindered from having his sentences reviewed..." [Doc. 6-2, p. 14]

2, Exhibit A; Doc. 6-8, Exhibit 7] On July 1, 2006 he received the requested copy of the sentencing transcript. [Doc. 6-1, p. 5; Doc. 6-9, Exhibit 8]

On some unspecified date he retained Mr. Stockstill as post-conviction counsel and on April 20, 2007 counsel filed an application for post-conviction relief in the Fifteenth Judicial District Court raising two claims for relief – (1) ineffective assistance of counsel based upon erroneous advice concerning parole eligibility rendering the plea involuntary; and (2) ineffective assistance of counsel based upon their failure to exercise the skill and diligence of reasonably competent counsel. A hearing was convened on February 13, 2008 and the proceedings were continued without date so that Manes could litigate the issue of parole eligibility in a civil suit filed against the Department of Corrections. [Doc. 1-6, Exhibit E][4] When that litigation ended in a judgment adverse to Manes, the post-conviction proceedings were resumed in the Fifteenth Judicial District Court. Evidentiary hearings were convened on October 27 and November 28, 2011. At the conclusion of the latter hearing the trial court denied post-conviction relief and provided oral reasons for judgment. [Doc. 1-4, Exhibit C; Doc. 1-5, Exhibit D]

Manes's applications for writs were denied by the Third Circuit on some unspecified date and thereafter by the Louisiana Supreme Court on September 27, 2013. *State of Louisiana v. David Manes*, 2013-0254 (La. 9/27/2013), — So.3d —. This petition was filed on the same date.

---

[4] Manes raised the issue of his parole eligibility in an Administrative Remedy Procedure grievance assigned number LSP-2008-2929. When that was denied by the Department, Manes sought judicial review in an appeal to the Nineteenth Judicial District Court in a civil action entitled <u>David Manes vs. Department of Corrections</u>, Docket Number 575,014 Section 25. On October 15, 2009 Commissioner Rachel P. Morgan recommended dismissal of his appeal. [Doc. 6-11, Exhibit 10] On November 20, 2009 District Judge Wilson Fields adopted the reasoning of the Commissioner's Report and ordered dismissal of his appeal. [*Id.*, p. 7]

*Law and Analysis*

*1. Timeliness – Section 2244(d)(1)(A)*

Title 28 U.S.C. §2244(d)(1)(A) was amended by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) to provide a one-year period of limitations for the filing of applications for writ of *habeas corpus* by persons, such as Manes, who are in custody pursuant to the judgment of a state court. This limitation period runs from the latest of various dates including "the date on which the judgment became final by the ... expiration of the time for seeking [direct] review..." or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence..." See 28 U.S.C. §2244(d)(1)(A) and (D).[5] The statutory tolling provision set forth in 28 U.S.C. §2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period.

Manes pled guilty and was sentenced on April 22, 2005. Pursuant to La. C.Cr.P. art. 914(B)(1),[6] he had 30 days or until May 23, 2005 to file a timely motion for appeal. Therefore his judgment of conviction became final under AEDPA on or about May 23, 2005 when the 30-day period for filing a motion to appeal lapsed.

Manes was able to toll limitations by the timely filing of his first application for post-

---

[5] Manes does not argue, nor does it appear from the record that a State created impediment prevented timely filing; further, Manes does not argue, nor does it appear that he relies upon a newly recognized and retroactive Constitutional right. See Section 2244(d)(1)(B) and (C). To the extent that Manes claims that timeliness should be reckoned as provided by Section 2244(d)(1)(D), that claim is addressed in Part 2 below.

[6] Art. 914(B)(1) provides, "The motion for an appeal must be made no later than [t]hirty days after the rendition of the judgment or ruling from which the appeal is taken..."

conviction relief seeking an out-of-time appeal on February 16, 2006, however, by the time he filed the application a period of 269 days of the 1-year limitation period had already elapsed. The first round of post-conviction litigation ended on July 18, 2006 when the Third Circuit denied writs and thereafter the AEDPA's limitation period commenced anew. Then, a period of 276 days elapsed before Manes filed his second application for post-conviction relief on April 20, 2007. It is axiomatic that any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period [see *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] and the limitations period is tolled only for as long as the state application remains pending in the state's courts. *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007).

In other words, by the time he filed the instant petition on September 27, 2013, a period of approximately 545 days elapsed un-tolled. If limitations is reckoned according to Section 2244(d)(1)(A), this petition is time-barred.

2. Timeliness – Section 2244(d)(1)(D)

Manes maintains that limitations should be reckoned as provided in Section 2244(d)(1)(D), from "... the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." He further contends that the factual predicate of his claim was discovered upon his receipt of the June 16, 2006 Memo of J. Babel of the Louisiana State Penitentiary Records Office. [Doc. 1-2, Exhibit A; Doc. 6-8, Exhibit 7]

If limitations is reckoned from June 16, 2006, then this petition is timely since a period of only 307 days elapsed between that date and April 20, 2007, the date his second application for

post-conviction relief was filed, and, as shown above, that application remained pending until the date he filed the instant petition.

Manes advances two claims for relief – "(1) Manes was denied effective assistance of counsel because his attorneys misadvised him regarding parole eligibility enticing him to plead and thereby waiving his right to a fair trial[;]" and "(2) The trial court erred when it denied Manes's claim that he was denied effective assistance of counsel because his attorneys failed to exercise the skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that he was prejudiced by his attorneys' ineffectiveness and therefore his plea was not a knowing and intelligent act." [Doc. 1, ¶IV] The **FACTUAL** basis of Manes's claims is that he was misinformed by his attorneys concerning his eligibility for parole. By his own admission, on September 1, 2005 he received his master service record which indicated that his parole eligibility date "was different than what he had been told by his attorneys at his sentencing." [Doc. 6-1, pp. 2-3] The master service record received on September 1, 2005 clearly and unambiguously alerted Manes to fact that he would not be parole eligible within 20 years. Further, the facts alleged clearly establish that Manes was aware of the factual basis for his claims during the period of time that his first application for post-conviction relief was being prepared by inmate counsel. By his own admission, during the period prior to February 16, 2006, he "... asked Inmate Counsel to include the issue concerning his parole eligibility in the post conviction relief application, but Inmate Counsel believed it was not an issue because Manes was parole eligible." [Doc. 6-1, p. 4]

Thus, contrary to his assertions, the available evidence establishes that he was (or should have been) aware of the factual basis of his claim on September 1, 2005 when he obtained a copy

7

of his master service record which indicated that his parole eligibility date "was different than what he had been told by his attorneys at his sentencing."

If limitations is reckoned from that date, the petition is time-barred since a period of 168 days elapsed un-tolled between September 1, 2005 (the date the factual basis of his claims was discovered) and February 16, 2006 (the date he filed his first application for post-conviction relief seeking an out-of-time appeal). Thereafter, as previously noted, 276 days elapsed un-tolled from July 18, 2006 (the date the Third Circuit denied writs ending his first round of post-conviction litigation) and April 20, 2007 (the date he filed his second application for post-conviction relief). In other words, even if limitations is reckoned in accordance with Section 2244(d)(1)(D), a period of 444 days elapsed un-tolled between the date he discovered the factual predicate of his claims and the date he filed the instant petition.

### 3. Equitable Tolling

AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir.2006). As recently noted by the Supreme Court, "... a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631,

130 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

Here, Manes defines the "extraordinary circumstances" in his case as follows –

The first factor which contributed to Manes' delay in filing timely was not receiving his sentencing transcript until July 1, 2006. Manes received his master service record which showed the discrepancy in the parole eligibility dates and shortly thereafter requested his sentencing transcript in September of 2005. Manes requested the transcript to begin his inquiry as to whether his parole eligibility date was incorrectly calculated. The ten (10) month delay in receiving the transcript contributed to the uncertainty surrounding the correctness of the parole eligibility date.

The second factor was his defense team's continued incorrect advice about his parole eligibility. Manes was repeatedly told that he was eligible for parole after serving twenty (20) years and his defense team's misadvice contributed to the uncertainty surround the correctness of the parole eligibility date. Finally, the third factor contributing to the uncertainty surround the parole eligibility date was the prosecution using Manes' belief that he would be eligible for parole after serving twenty (20) years to obtain his statement and cooperation in the trial of his co-defendant, Jim Nguyen. All of these factors undercut the diligent efforts of Manes causing his untimely filing." [Doc. 6-1, pp. 9-10]

With regard to the delay in receiving the sentencing transcript, Manes does not explain why receipt and review of the transcript was important. Indeed, he made no reference to the transcript in either his first or second applications for post-conviction relief. Nor was the transcript an issue raised in the three evidentiary hearings convened in conjunction with the second application for post-conviction relief. Indeed, Manes has filed numerous exhibits with the Court, but has not filed the transcript. Since the transcript is apparently irrelevant to these proceedings, it strains credulity to suggest that the failure to timely provide Manes with a copy authorizes the application of equitable tolling. In short, the failure to timely receive the sentencing transcript is not an extraordinary circumstance so as to warrant the application of

equitable tolling.

    Likewise, the "misadvice" given by petitioner's "defense team" is not an extraordinary circumstance. It does not appear, nor does Manes allege, that counsel engaged in purposeful and deceptive misrepresentation. At worst, the "defense team" erred in their understanding of the applicable statute concerning parole eligibility. It has long been the law of this circuit that attorney error or neglect does not warrant equitable tolling. *Cousin v. Lensing*, 310 F.3d 843 (5th Cir.2002). Further, unlike counsel in *Holland v. Florida, supra*, Manes does not fault counsel, or his "defense team" for failing to timely file his federal *habeas corpus* claims; nor does he fault these gentlemen for misleading him into thinking that the appropriate papers were timely filed. Indeed, he faults counsel for providing an opinion that was at odds with the information provided by the Department of Corrections, a clear cut case of attorney error. In order for attorney error to justify equitable tolling, the professional mistake must "amount to egregious behavior" and thereby "create an extraordinary circumstance." See *Holland*, 130 S.Ct. at 2563. "'[A] garden variety claim of excusable neglect,' such as a simple 'miscalculation'... does not warrant equitable tolling." *Id.* (citations omitted).

    Finally, with regard to the claim that his was misled by Mr. Ayo's agreement to refrain from opposing parole in return for Manes's cooperation in the upcoming trial of his co-defendant, such a claim, if true, likewise does not amount to an " extraordinary circumstance." First of all, the allegation concerning the alleged conversation between Ms. Meeks and Mr. Ayo is not supported by the record. Indeed Ms. Meeks testified at the hearing convened on the second application for post-conviction relief, yet she made no mention of such a conversation. [Doc. 1-4, pp. 19-25] Second, even if the conversation took place, and even if the prosecutor agreed to

refrain from objecting to parole at some point in time in the future, that alone is insufficient to establish an "extraordinary circumstance" so as to warrant equitable tolling.  Manes claims that these "representations made by Ayo to Meeks" caused him "to believe that he would be eligible for parole after serving twenty (20) years...", however, the reference to the alleged conversation does not even suggest that Ayo made such a representation.

In short, nothing of record supports equitable tolling of the statute of limitations in the instant case.  Manes was not actively misled by the state of Louisiana; nor does it appear that he was prevented in some extraordinary way from asserting his rights by timely filing his *habeas* claims.

*Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DISMISSED WITH PREJUDICE**  because Manes's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Lafayette, Louisiana January 16, 2014.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**